UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| JOSHUA J. RITCHOTT, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 21-cv-1072 |
| | ) |
| M. SEGAL, Warden, FCI Pekin, | ) |
| | ) |
| Respondent. | ) |

## ORDER AND OPINION

**JAMES E. SHADID, U.S. District Judge:**

Before the Court is a Petitioner Joshua J. Ritchott's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (d/e 1). Petitioner alleges his prison disciplinary hearing, which resulted in good conduct time credits being revoked, did not comply with due process. For the reasons stated below, the Court will schedule an evidentiary hearing on this matter on the limited issue of whether Petitioner made a timely request for video evidence to be reviewed.

### I.  BACKGROUND

Petitioner is currently serving a sentence of 156 months' imprisonment resulting from his convictions in the United States District Court for the Northern District of Iowa for conspiracy to distribute and possession with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), and 21 U.S.C. § 846, and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). *See United States v. Ritchott,* Case No. 17-cr-04021-001 (N.D. Iowa), Judgment (d/e 82). Petitioner was incarcerated at the Pekin Federal Correctional Institution in Pekin, Illinois (FCI Pekin) at the time of filing this

Petition. He has since been transferred to FCI Oakdale I, in Oakdale, Louisiana, and has a projected release date of April 16, 2028.

The event which lead to Petitioner's disciplinary hearing and sanctions occurred on January 27, 2019. On that date, a Bureau of Prisons ("BOP") officer entered a cell shared by Petitioner and another inmate, Tristan Workman. During a search of the cell, the officer discovered a paper packet containing four orange film triangles affixed to the underside of the lower bunk. BOP staff submitted the triangles to a lab and the lab found them positive for Buprenorphine—an illegal narcotic. Following receipt of the lab results, BOP staff prepared an incident report charging Petitioner with Possession of Any Narcotics, Code 113 in the list of prohibited acts in BOP's Inmate Discipline Program. *See* BOP Program Statement 5270.09, Inmate Discipline Program (July 8, 2011) available at https://www.bop.gov/policy/progstat/5270_009.pdf ("Inmate Discipline Program"). A Code 113 is considered a "Greatest Severity Level Prohibited Act." *Id.* at p.44.

Pursuant to the BOP Disciplinary Process, after an incident report regarding a disciplinary infraction is prepared, the report is reviewed by a Unit Discipline Committee ("UDC") at the inmate's institution. *See* 28 C.F.R. § 541.7. After reviewing the incident report, here, the UDC was required to refer the incident report to the Discipline Hearing Officer ("DHO") for further review because Petitioner was charged with a Greatest Severity Level Prohibited Act. *See* 28 C.F.R. § 541.7(a)(4). Accordingly, pursuant to the Inmate Discipline Program, Petitioner was required to be given written notice of the charge against him no less than 24 hours before his appearance before the DHO. Additionally, if Petitioner requested, the Warden was required to provide the inmate with a full-time staff member to represent the inmate at the hearing before the DHO. Petitioner was also entitled to make a statement and present

evidence on his own behalf at the DHO hearing. Witnesses, however, can be limited at the discretion of the DHO. *See* 28 C.F.R. § 541.8(f).

Petitioner was provided with a copy of the incident report on February 10, 2019. Petitioner denied that the narcotics belonged to him or Mr. Workman. He argued that he believed that the drugs were "planted by another inmate." The following day, BOP staff advised Petitioner of his rights during the disciplinary process. At that time, Petitioner requested Officer Hunt as his staff representative. The UDC held an initial hearing, where Petitioner was again advised of his rights and the UDC referred the matter to the DHO for further review and gave notice to Petitioner of the upcoming DHO hearing. Officer Hunt also signed a form acknowledging his responsibilities as a staff representative on February 12, 2019.

On February 13, 2019, the DHO held a hearing on Petitioner's charge. According to Respondent, Petitioner waived his right to a staff representative prior to the hearing and elected to proceed without representation. Resp. at 5 (d/e 8). Petitioner, however, claims that he was "forced to forgo his right to [a] staff representative." Pet. at 3 (d/e 1). Specifically, Petitioner claims that he was told that his staff representative was unavailable and that his hearing would need to be rescheduled if he did not waive his right. *Id.* at 5. Petitioner argues that, at best, this would have resulted in a two-week delay and possibly longer while he waited in the SHU. *Id.* Petitioner also argues that he had no guarantee that his choice of staff representative would be available at the next scheduled hearing either. *Id.* Petitioner also requested that the DHO call Mr. Workman (Petitioner's cellmate) as a witness, but the DHO declined. The DHO stated that the request was denied because Mr. Workman had already submitted a joint statement with Petitioner to the UDC, which asserted that the drugs were not his or Petitioner's. Additionally, Mr. Workman was already in transit to a halfway house at the time of the hearing.

At the hearing, Petitioner denied the charge and alleged that another inmate had planted the narcotics. The DHO considered Petitioner's statements, Mr. Workman's prior statement, the incident report, a memorandum from the officer who found the drugs, the lab report, and photos of the narcotics. The DHO ultimately ruled that Petitioner committed the charged act and memorialized that ruling in a report. The DHO imposed various sanctions on Petitioner, including the loss of 41 days of good conduct time. Petitioner was advised of his administrative appeal rights, and he appealed the DHO's decision to the regional BOP office and to the National Inmate Appeals Administrator at BOP's Central Office. Both entities denied his appeals, though an administrative error was found and remedied in the DHO report.

Petitioner also claims that he requested video footage prior to and during the DHO hearing. Neither party has submitted any written documentation of Petitioner making a request to review video footage prior to the hearing. The BOP claims that the request was first made on March 28, 2019, which was six weeks after his hearing. Petitioner has submitted a copy of an email send to "Safety" and to the warden on March 28, 2019, requesting "to have the video footage saved from . . . January 27th from morning unlock to yard recall for use in a DHO appeal." Pet. Ex. at 38, 39 (d/e 1). In an administrative remedy appeal on June 4, 2019, Petitioner again raised his video footage requests and said: "I even brought this up to the DHO officer as I have sent numerous cop-outs to S.I.S., the Warden, the Captain, and to Safety requesting to review said footage." *See* Pet. at 25 (d/e 1). He also stated in this appeal that on the morning of his DHO hearing, Officer Hunt had another officer tell him that there "wasn't any video footage that S.I.S. would allow him to review." *Id.* In a later administrative remedy appeal to the central office, Petitioner acknowledged that "review of the discipline packet will not show my request for video footage," but argues that this is because "I was never interviewed,

as requested, and pursuant to PS 5270.08." *See* Pet. at 34 (d/e 1). He also reasserted in that administrative appeal that he made repeated verbal requests to see the video footage both before and during his DHO hearing. *Id.* at 35. The BOP claims that Petitioner had the opportunity to review all of the evidence considered at the time of the hearing and did not raise any issues related to possibly relevant video footage until after the hearing. Respondent claims that by the time Petitioner requested the video footage (March 28, 2019), the footage was no longer available.

Petitioner filed this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 on February 24, 2021. He argues that BOP violated his due process rights by denying him: (1) a staff representative to assist with his case; (2) the right to call witnesses on his behalf; and (3) the right to present the video footage as evidence. He seeks the restoration of his good conduct time and the expungement of the infraction from his disciplinary record. Respondent filed its response in opposition (d/e 8) on May 12, 2021. Petitioner thereafter filed a motion to compel (d/e 9) seeking any video or audio recording or transcript of his disciplinary hearing before the DHO. The Government filed a response (d/e 10) stating that no such record exists, so the Court denied Petitioner's motion to compel. Petitioner has now also filed a timely reply (d/e 12) to the Government's response to his Petition.

## II. DISCUSSION

A petition seeking habeas corpus relief is appropriate under 28 U.S.C. § 2241 when a petitioner is challenging the fact or duration of his confinement. *Preiser v. Rodriguez,* 411 U.S. 475, 490, 93 S.Ct. 1827 (1973); *Waletzki v. Keohane,* 13 F.3d 1079, 1080 (7th Cir. 1994). Petitioner's claims, challenging the denial of good conduct time, is properly brought in a § 2241 petition. *Waletzki v. Keohane*, 13 F.3d 1079, 1081 (7th Cir. 1994). Moreover, while Petitioner

has now been transferred out of this Court's territorial jurisdiction, "a prisoner's transfer from one federal facility to another during the pendency of a habeas corpus proceeding does not affect the original district court's jurisdiction." *In re Hall*, 988 F.3d 376, 378 (7th Cir. 2021).

Federal prisoners have a statutory right to good conduct time and the loss of such credits affects a liberty interest protected by the Due Process Clause of the Fourteenth Amendment. *Wolff v. McDonnell*, 418 U.S. 539, 558, 94 S. Ct. 2963, 2976 (1974); *Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 448, 105 S. Ct. 2768, 2770 (1985); *see also Jones v. Cross,* 637 F.3d 841, 845 (7th Cir. 2011). Due process requires that prison administrators cannot revoke good time credits without "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Hill*, 472 U.S. at 454 (*citing Wolff,* 418 U.S. at 563-67). Further, the findings must be "supported by some evidence in the record." *Id.*

Here, Petitioner here argues that his due process rights were violated when he was denied a staff representative, when he was not allowed to view video evidence he believes would have been exculpatory, and when his request to call witnesses was denied. The Court finds that Petitioner's due process rights were not violated with regard to his right to a staff representative or to his right to call witnesses. However, an evidentiary hearing is needed to resolve the material dispute regarding whether Petitioner timely requested the video footage.

### A. Petitioner Waived his Right to A Staff Representative.

Petitioner first argues that the BOP violated his due process rights by denying him a staff representative. "Due process d[oes] not require that the prisoner be appointed a lay advocate,

unless 'an illiterate inmate is involved . . . or where the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case.'" *Miller v. Duckworth*, 963 F.2d 1002, 1004 (7th Cir. 1992) (quoting *Wolff*, 418 U.S. at 570). Petitioner's filings, however, support an argument that the issues here were sufficiently complex that a staff representative was necessary. Petitioner argues that for fear of retaliation he did not believe that he could name who the inmate was that he alleges planted the contraband in his cell because the UDC hearings are held through the cell door in the SHU where every person can hear what is said. However, he believes that if he had been able to proceed with a staff representative, the staff representative could have called and questioned both his cellmate and the unidentified inmate without fear of harm. He also believes that the staff representative could have plausibly claimed to have identified the other inmate from the security camera footage instead of from Petitioner. However, even if this was the rare case where due process required a lay advocate, Petitioner has not indicated that he raised these concerns at any time before or during the DHO hearing.

Moreover, Petitioner waived his right to a staff representative at his DHO hearing after being informed that his desired staff representative—Officer Hunt—was unavailable at the time of his hearing. Petitioner alleges that this waiver was not voluntarily because, if had he not waived his right, his hearing would have been delayed and there was no guarantee that his staff representative would be available next time. However, there is nothing in the record to suggest that the BOP was intentionally trying to prevent Petitioner's staff representative from attending the hearing or that he would not have been available in a subsequently scheduled hearing. *See also*, Resp., Declaration of M. DeLoia ¶9 (d/e 8-1) (explaining that if Petitioner had still wanted a staff representative after being told that Officer Hunt was assigned to another building that day,

he "would have either checked to see if Officer Hunt could be allowed to come to the hearing or would have adjourned the hearing until a later date when he was present."). Accordingly, the Court does not find that Petitioner's due process rights were denied when his hearing proceeded without a staff representative.

### B. An Evidentiary Hearing is Needed Regarding Petitioner's Request for Video Evidence.

Petitioner next argues his right to present documentary evidence was violated when video footage was not reviewed and presented at his hearing. Petitioner alleges that someone else planted the contraband in his cell prior to the search and that video evidence would have shown this person entering the cell in the morning before the search of his cell. Prisoners facing disciplinary hearings "are entitled to have exculpatory evidence disclosed unless its disclosure would unduly threaten institutional concerns." *Piggie v. McBride*, 277 F.3d 922, 925 (7th Cir. 2002); *see also* BOP Program Statement 5270.09 ("If the inmate requests exculpatory evidence, such as video or audio surveillance, the investigator must make every effort to review and preserve the evidence. It would also be prudent for the investigator to review and preserve the video or audio surveillance even if the inmate does not make a specific request as such evidence is relevant to the incident."). However, due process does not require hearing officers to consider evidence that could have been, but was not presented at the hearing. *See id.*; *McPherson v. McBride*, 188 F. 3d 784, 786 (7th Cir. 1999). Accordingly, the first question in evaluating a prisoner's claim is whether a timely request was made for the evidence. *Ashby v. Davis*, 82 Fed. App'x 467, 470 (7th Cir. 2003). A request is timely if it is made "either before or at the hearing." *Piggie*, 277 F.3d at 925.

Here, Respondent does not advance any arguments that viewing the video would have raised institutional concerns or that the video would not have been potentially exculpatory. Rather, Respondent argues that Petitioner did not make a timely request. Respondent has submitted an affidavit from DHO Officer DeLoia asserting that Petitioner "did not raise any issues related to video of the unit during his hearing." *See* Declaration of M. DeLoia ¶ 11 (d/e 8-1). Further, Officer DeLoia states that Petitioner did not make any requests for video footage to be preserved until March 28, 2019, six weeks after his DHO hearing. *Id.* ¶15; *see also* Pet. at 38, 39 (d/e 1) (copies of March 28, 2019 emails to the warden and "Safety" seeking to preserve video footage).

Petitioner, however, submitted an affidavit with his Petition asserting that he made his request for video footage orally prior to and during the DHO hearing. Specifically, he attests that he and his cellmate, Mr. Workman, both asked Officer Birch if they could review the video footage. Pet. Aff. ¶14 (d/e 1 at 14). Petitioner says that they were told that they needed to file a written request with the Special Investigative Supervisor ("SIS"). Petitioner says they then sent multiple requests to SIS to review the footage. *Id.* ¶14-15. Petitioner also states that on February 10, 2019, when he was interviewed by the investigator, he again requested that the video footage be reviewed. *Id.* ¶16. Finally, Petitioner states that at his DHO hearing, he "asked for the video again to be reviewed" and preserved. *Id.* ¶19.

"[W]hen a prisoner who seeks a writ of habeas corpus provides competent evidence (such as an affidavit by someone with personal knowledge of the events) contradicting an assertion by the prison disciplinary board on a material question of fact pertinent to an issue of constitutional law, the district court must hold an evidentiary hearing to determine where the truth lies." *Johnson v. Finnan*, 467 F.3d 693, 694 (7th Cir. 2006). Here, Petitioner has provided competent

evidence because he "has sworn under oath that he made timely requests for this evidence—a subject on which he has first-hand knowledge." *Id.* 694–95.  Accordingly, the Court cannot assume that either party's account is credible over the other without holding an evidentiary hearing.  *See also, Felder v. McBride*, 121 F. App'x 655, 658 (7th Cir. 2004) (holding that if a potentially exculpatory tape has been erased and the district court finds that a petitioner made a timely request to view the tape "then habeas corpus relief must be granted.").  Therefore, Petitioner's request for an evidentiary is granted as to this issue.

### C. Petitioner's Due Process Rights Were Not Denied When the DHO Refused to Call Mr. Workman as a Witness.

Petitioner also alleges that his right to call witnesses was denied.  Prisoners have a right to call witnesses in disciplinary hearings, but this right "is not absolute." *Oswalt v. Godinez*, 894 F. Supp. 1181, 1187–88 (N.D. Ill. 1995) (*citing Baxter v. Palmigiano*, 425 U.S. 308, 321 (1976)).  "Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority. . . ." *Wolff*, 418 U.S. at 566.  "[A] prisoner has no right to call a witness whose testimony would be irrelevant, repetitive, or unnecessary." *Oliver v. Pfister*, 655 F. App'x 497, 500 (7th Cir. 2016) (*citing Piggie v. Cotton*, 344 F.3d 674, 677 (7th Cir. 2003); *Pannell v. McBride*, 306 F.3d 499, 502–03 (7th Cir. 2002); *Forbes v. Trigg*, 976 F.2d 308, 317–18 (7th Cir. 1992)).

Petitioner alleges that he wanted to call his cellmate, Mr. Workman, and an "unidentified inmate" as witnesses.  Petitioner does not allege that he actually requested to call the "unidentified inmate" as a witness, nor would this request have been able to have been granted unless Petitioner informed the DHO of the individual's name.  The DHO stated that the request

for Mr. Workman to be called as a witness was denied because Mr. Workman had already submitted a joint statement with Petitioner to the UDC, which asserted that the drugs were not his or Petitioner's. *See* Resp. Ex. E, (d/e 8-2 at p. 14). Additionally, Mr. Workman was already in transit to a halfway house at the time of the hearing. In his Petition, Petitioner argues that Mr. Workman might have been able to name the "unidentified inmate" that Petitioner alleges planted the drugs because Mr. Workman would have had less security concerns due to his impending transfer to a halfway house. However, Petitioner concedes in his petition that he did not explain why Mr. Workman's testimony would have been necessary at the time of the hearing. Pet. at 6 (d/e 1) ("Admittedly, Ritchott failed to articulate what testimony Workman would provide in addition to the joint written statement."). Accordingly, the Court finds that the DHO did not violate Petitioner's due process by refusing to call Mr. Workman when there was no indication that his testimony would have been different from his written statement.

### III. CONCLUSION

For the reasons stated above, the Court GRANTS an evidentiary hearing under 28 U.S.C. § 2255(b) regarding Petitioner's claim that he requested video evidence be reviewed. An evidentiary hearing will be scheduled before Judge James E. Shadid via video conference. All other claims are denied.

Pursuant to 18 U.S.C. § 3006A(a)(2)(B) and Rules 1 and 8(c) of the Rules Governing Section 2254 Proceedings in the United States District Court, the Court APPOINTS the Office of the Federal Public Defender to represent Petitioner in this matter. The Clerk is DIRECTED to provide a copy of this Order to the Office of the Federal Public Defender.

**Signed on this 19th day of October 2021.**

*s/ James Shadid*
James Shadid
United States District Judge
